# STATE OF MICHIGAN

# COURT OF APPEALS


In re S L-E POLEY, Minor.

UNPUBLISHED
February 10, 2015

No. 321522
Washtenaw Circuit Court
Family Division
LC No. 2012-000029-NA


Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Respondent-mother appeals as of right an order terminating her parental rights to the minor child, SLEP, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (g) (failure to provide proper care and custody). We affirm.

Respondent first argues on appeal that the trial court erroneously found statutory grounds to terminate her parental rights. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id*.

Here, the trial court properly terminated respondent's parental rights pursuant to MCL 712A.19b(3)(g), which provides that termination is proper where "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Respondent had a history of substance abuse and mental health issues, which included attempting suicide. In June 2011, respondent was provided with infant mental health services to assist her with parenting SLEP. In March 2012, SLEP entered care, in part because respondent failed to properly supervise SLEP and permitted her to remain in a home that did not have an appropriate source of heat. Nonetheless, respondent believed that SLEP was "wrongly" taken into care. In August 2012, respondent used crack cocaine. Although she indicated that she stopped consuming illegal substances after October 31, 2012, she never consistently submitted to substance screenings to demonstrate her sobriety. As of October 2012, Dr. Joshua Ehrlich had concerns about respondent's parenting abilities and was unable to think of services that would help her improve. He also believed that respondent had difficulty controlling her anger and that she chose inappropriate partners. In December 2012, respondent asked that her services with the infant mental health worker be discontinued even though

-1-

respondent lacked the ability to keep SLEP safe and meet her basic needs. As of December 2012, the infant mental health worker was unaware of other services that could be offered to help respondent and considered her to be "one of the most disturbed mothers" with whom she had ever worked.

In February 2013, respondent married a man who fathered her second child, SMLP, who was born in November 2013.[1] SMLP's father was "very aggressive," and the relationship ended. Thereafter, respondent began a new relationship and began living with her new boyfriend. Respondent brought her new boyfriend to parenting time visits despite the fact that he had not submitted to a background check and been approved by the agency. Between December 2013 and March 11, 2014, respondent only attended 85 to 90 percent of her parenting time visitations. During one parenting time visit at a mall, respondent did not notice that SLEP was talking to a strange man because respondent was on her telephone at the time. Respondent completed a parenting class and another parenting program, but the record supports that she did not benefit from them. Although respondent's boyfriend was aggressive toward her and the second caseworker during the proceeding and had a felony warrant out for his arrest, respondent minimized his actions, denied that there was an active warrant for his arrest, and planned for SLEP to live with them. Respondent did not have a solid plan for where she and SLEP would live if they were no longer able to live with respondent's boyfriend. Before respondent acquired employment in March 2014, she had not been employed since September 2012; she did not have a specific plan for child care while she was working during the evenings. Respondent was receiving Social Security Income as a result of her post traumatic stress disorder and depression diagnoses at the time of termination, but she did not elaborate as to the amount she received. Further, respondent was not in counseling at the time of termination. Based on respondent's actions leading up to termination, Dr. Ehrlich did not believe that she had improved since the evaluation was performed in 2012. Respondent was unable to provide proper care and custody to the minor child at the time of termination.

Further, there is no evidence that respondent would have been "able to provide proper care and custody within a reasonable time considering" the minor child's age. See MCL 712A.19b(3)(g). Respondent demonstrated a lack of commitment to regaining custody of SLEP during the proceeding and continued to demonstrate poor judgment at the time of termination. Although respondent had difficulty parenting one child, she gave birth to SMLP during the proceeding and, thus, had two young children who required care at the time of termination. Dr. Ehrlich and the infant mental health worker were unable to think of any services that would help respondent improve. At the time of termination, SLEP was three years old and had been in care for over two years. The trial court's finding that termination of respondent's parental rights was proper pursuant to MCL 712A.19b(3)(g) does not leave us with a definite and firm conviction that a mistake has been made. See *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). Because we have concluded that at least one ground for termination existed, we need not consider the additional ground upon which the trial court based its decision. See *id.* at 461.

---

[1] Respondent's parental rights to SMLP were terminated, and a separate appeal regarding that decision was filed in docket no. 322312.

Respondent next argues that the trial court clearly erred when it concluded that termination of her parental rights was in the minor child's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review a trial court's finding that termination is in the child's best interests for clear error. *In re HRC*, 286 Mich App at 459.

"In deciding whether termination is in a child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (internal citations omitted). In *In re VanDalen*, 293 Mich App at 141, this Court also looked at evidence that the children were not safe with the respondents, were thriving in foster care, and that the foster care home could provide stability and permanency.

Here, respondent and SLEP interacted well during parenting time, SLEP knew that respondent was her mother, and the visitation supervisors commented that respondent and SLEP were bonded. However, the record also supports that the bond was not healthy for SLEP. See *In re Olive/Metts*, 297 Mich App at 41-42. Before the proceeding began, respondent exposed SLEP to housing that was not properly heated and improper supervision. Respondent also failed to protect her from being bitten by a dog. The record does not support that respondent benefitted from the services initiated to improve her parenting skills, and the infant mental health worker described respondent as "one of the most disturbed mothers" with whom she had ever worked. Respondent neither resolved her mental health issues nor remedied her tendency to engage in relationships with aggressive men. On appeal, respondent points to her ability to care for SLEP during parenting time visits, but they only lasted for one hour at a time. Further, between December 2013 and March 11, 2014, respondent only attended 85 to 90 percent of her parenting times. As of October 2012, Dr. Ehrlich did not believe that respondent would be able to effectively care for SLEP. Although respondent argues on appeal that his conclusions were outdated at the time of termination, Dr. Ehrlich testified at the termination hearing that respondent's behavior during the proceeding supported that she had not changed or benefitted from services. The record does not support that SLEP would be safe in respondent's care. See *In re VanDalen*, 293 Mich App at 141.

On appeal, respondent argues that she should have been given more time to participate in services, but this Court looks at the best interests of the minor child, including her need for stability, when deciding best interests. See *In re Trejo Minors*, 462 Mich 341, 364; 612 NW2d 407 (2000). Here, SLEP had been in care for over two years and had been moved multiple times. Near the end of the proceeding, SLEP did not want to leave daycare to attend parenting time visits. When she returned to school from the visits, she was "very timid and . . . very slow to reintegrate into the group." It is clear that SLEP required routine, stability, and consistency. Respondent was unable to provide this at the time of termination given that she had been employed less than one month before termination and lived with her boyfriend, who was aggressive and paid for their housing through a permanent housing voucher. Respondent had a history of unstable relationships, and she lacked a stable plan regarding where she and SLEP would live if her then-current relationship ended. Respondent also failed to demonstrate sobriety

by consistently submitting to random substance screenings. At the time of termination, SLEP's foster parents were willing to adopt her, and the record supports that she was thriving in their care and that the foster parents and SLEP loved each other. The trial court did not clearly err in finding that termination of respondent's parental rights was in the minor child's best interests. See *In re HRC*, 286 Mich App at 459.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro